Daniel Sadeh, Esq.
**HALPER SADEH LLP**
667 Madison Avenue, 5th Floor
New York, NY 10065
Telephone: (212) 763-0060
Facsimile: (646) 776-2600
Email: sadeh@halpersadeh.com

*Counsel for Plaintiff*

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| CHRISTOPHER CARRIER,<br><br>Plaintiff,<br><br>v.<br><br>GRUBHUB INC., BRIAN MCANDREWS, DAVID FISHER, LLYOD FRINK, DAVID HABIGER, LINDA JOHNSON RICE, KATRINA LAKE, GIRISH LAKSHMAN, MATT MALONEY, and KEITH RICHMAN,<br><br>Defendants. | Case No:<br><br>JURY TRIAL DEMANDED |

### COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

Plaintiff Christopher Carrier ("Plaintiff"), by Plaintiff's undersigned attorneys, for Plaintiff's complaint against Defendants (defined below), alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and upon information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through Plaintiff's attorneys.

### NATURE OF THE ACTION

1. This is an action against Grubhub Inc. ("Grubhub" or the "Company") and its Board of Directors (the "Board" or the "Individual Defendants") for their violations of Sections

1

14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a) and 78t(a), and Rule 14a-9 promulgated thereunder by the SEC, 17 C.F.R. § 240.14a-9, in connection with the proposed acquisition (the "Proposed Transaction") of Grubhub by Just Eat Takeaway.com N.V. ("Just Eat"), Checkers Merger Sub I, Inc. ("Merger Sub I") and Checkers Merger Sub II, Inc. ("Merger Sub II"). Merger Sub I and Merger Sub II are wholly owned subsidiaries of Just Eat.

## JURISDICTION AND VENUE

2. The claims asserted herein arise under and pursuant to Sections 14(a) and 20(a) of the Exchange Act (15 U.S.C. §§ 78n(a) and 78t(a)) and Rule 14a-9 promulgated thereunder by the SEC (17 C.F.R. § 240.14a-9).

3. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331, and Section 27 of the Exchange Act, 15 U.S.C. § 78aa.

4. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) and Section 27 of the Exchange Act (15 U.S.C. § 78aa(c)) as a substantial portion of the transactions and wrongs complained of herein had an effect in this District, the alleged misstatements entered and the subsequent damages occurred in this District, and the Company conducts business in New York City, including maintaining offices in New York City.

5. In connection with the acts, conduct and other wrongs alleged in this complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mails, interstate telephone communications and the facilities of the national securities exchange.

## PARTIES

6. Plaintiff is, and has been at all relevant times hereto, an owner of Grubhub common stock.

7. Defendant Grubhub, together with its subsidiaries, provides an online and mobile platform for restaurant pick-up and delivery orders in the United States. The Company is incorporated in Delaware and maintains offices in New York City. The Company's common stock trades on the New York Stock Exchange under the ticker symbol, "GRUB."

8. Defendant Brian McAndrews ("McAndrews") is Chairman of the Board of the Company.

9. Defendant David Fisher ("Fisher") is a director of the Company.

10. Defendant Lloyd Frink ("Frink") is a director of the Company.

11. Defendant David Habiger ("Habiger") is a director of the Company.

12. Defendant Linda Johnson Rice ("Rice") is a director of the Company.

13. Defendant Katrina Lake ("Lake") is a director of the Company.

14. Defendant Gilrish Lakshman ("Lakshman") is a director of the Company.

15. Defendant Matt Maloney ("Maloney") is Chief Executive Officer and a director of the Company.

16. Defendant Keith Richman ("Richman") is a director of the Company.

17. Defendants McAndrews, Fisher, Frink, Habiger, Rice, Lake, Lakshman, Maloney, and Richman are collectively referred to herein as the "Individual Defendants."

18. Defendants Grubhub and the Individual Defendants are collectively referred to herein as the "Defendants."

**SUBSTANTIVE ALLEGATIONS**

A. The Proposed Transaction

19. On June 10, 2020, Grubhub and Just Eat announced that they had entered into a definitive agreement whereby Just Eat would acquire 100% of the shares of Grubhub in an all-stock transaction. Under the terms of the agreement, Grubhub shareholders will be entitled to receive American Depositary Receipts representing 0.6710 Just Eat Takeaway.com ordinary shares in exchange for each Grubhub share. The press release announcing the Proposed Transaction states, in pertinent part:

FOR IMMEDIATE RELEASE

**Amsterdam, 10 June 2020**

**Just Eat Takeaway.com to combine with Grubhub to create a leading global online food delivery player**

**Just Eat Takeaway.com N.V. (AMS: TKWY, LSE: JET), (the "Company" or "Just Eat Takeaway.com"), and Grubhub Inc. (NYSE: GRUB) ("Grubhub") have entered into a definitive agreement whereby the Company is to acquire 100% of the shares of Grubhub in an all-stock transaction (the "Transaction") to create the world's largest online food delivery company outside of China, measured by Gross Merchandise Value ("GMV") and revenues.**

The Transaction represents Just Eat Takeaway.com's entry into online food delivery in the United States ("U.S.") and builds on the strategic rationale for its recent merger with Just Eat plc ("Just Eat"). A combined Just Eat Takeaway.com and Grubhub (the "Combined Group") will become the world's largest online food delivery company outside of China1, with strong brands connecting restaurant partners with their customers in 25 countries. The Combined Group will be built around four of the world's largest profit pools in online food delivery: the U.S., the United Kingdom ("U.K."), the Netherlands and Germany, increasing the Combined Group's ability to deploy capital and resources to strengthen its competitive positions in all its markets. The Combined Group has strong leadership positions in almost all countries in which it is present and will become a significant player in North America. Just Eat Takeaway.com owns the leading Canadian business SkipTheDishes. The Combined Group is one of the few profitable players in the space and processed approximately 593 million orders in 2019 with more than 70 million combined active customers globally.

4

Key Terms

- Under the terms of the Transaction, Grubhub shareholders will be entitled to receive American depositary receipts ("ADRs") representing 0.6710 Just Eat Takeaway.com ordinary shares in exchange for each Grubhub share, representing an implied value of $75.15 for each Grubhub share (based on the undisturbed closing price of Just Eat Takeaway.com on 9 June 2020 of €98.602) and implying a total equity consideration (on a fully diluted basis) of $7.3 billion.

- Immediately following completion of the Transaction, Grubhub shareholders are expected to own ADRs representing approximately 30.0% of the Combined Group (on a fully diluted basis).

- On completion, Matt Maloney, CEO and founder of Grubhub, will join the Just Eat Takeaway.com Management Board and will lead the Combined Group's businesses across North America and two current Grubhub Directors will join the Just Eat Takeaway.com Supervisory Board.

- The Transaction is subject to the approval of both Just Eat Takeaway.com's and Grubhub's shareholders, as well as other customary completion conditions. Subject to satisfaction of the conditions, completion of the Transaction is anticipated to occur in the first quarter of 2021.

- The Combined Group will be headquartered and domiciled in Amsterdam, the Netherlands, with its North American headquarters in Chicago and a significant presence in the U.K.. 1 Measured by GMV and revenues. 2 Converted to USD from EUR at an exchange rate of 1.13585, the exchange rate at 17:30 CET / 16:30 BST on 9 June 2020. 2

- Just Eat Takeaway.com is listed on Euronext Amsterdam and the Main Market of the London Stock Exchange and will introduce an ADR listing in the U.S..

Both the Managing Board and the Supervisory Board of Just Eat Takeaway.com and the Board of Directors of Grubhub are recommending the Transaction to their respective shareholders. Jitse Groen, CEO and founder of Just Eat Takeaway.com, has entered into a voting and support agreement, and subject to and in accordance with the terms thereof, has committed to vote in favour of the Transaction at the Just Eat Takeaway.com extraordinary general meeting ("EGM").

*   *   *

**Key Terms of the Merger Agreement**

On 10 June 2020, Just Eat Takeaway.com entered into an Agreement and Plan of Merger (the "Merger Agreement"), by and among Just Eat Takeaway.com, Grubhub, Checkers Merger Sub I, Inc. ("Merger Sub I"), a Delaware corporation and a wholly-owned subsidiary of Just Eat Takeaway.com, and Checkers Merger Sub II, Inc. ("Merger Sub II"), a Delaware corporation and a wholly-owned subsidiary of Just Eat Takeaway.com, providing for the acquisition by Just Eat Takeaway.com of all of the issued and outstanding shares of common stock of Grubhub.

At the effective time of the Transaction, on the terms and subject to the conditions set forth in the Merger Agreement, each share of common stock of Grubhub will be converted into the right to receive ADRs representing 0.6710 Just Eat Takeaway.com ordinary shares, without interest.

Consummation of the Transaction is subject to customary closing conditions, including (i) the required approval of the Merger Agreement by the shareholders of Just Eat Takeaway.com and Grubhub; (ii) completion of any review by U.S. and U.K. antitrust authorities and the Committee on Foreign Investment in the United States (CFIUS); (iii) the absence of any order prohibiting the Transaction; (iv) the accuracy of the representations and warranties of the parties and compliance by the parties with their respective obligations under the Merger Agreement (subject to customary materiality qualifiers); (v) the absence of any material adverse effect on Just Eat Takeaway.com or Grubhub since the date of the Merger Agreement; and (vi) approval of listing of the Just Eat Takeaway.com ADRs to be issued as the merger consideration on a U.S. stock exchange.

Just Eat Takeaway.com and Grubhub have each made customary representations and warranties and covenants in the Merger Agreement. Among other things, each of Just Eat Takeaway.com and Grubhub may not solicit or participate in discussions with third parties regarding alternative acquisition proposals, subject to exceptions that allow each of Just Eat Takeaway.com and Grubhub under certain circumstances to provide information to and participate in discussions with third parties with respect to unsolicited alternative acquisition proposals. In addition, until the termination of the Merger Agreement or the effective time of the Transaction, each of Just Eat Takeaway.com and Grubhub has agreed to use reasonable best efforts to operate its business in the ordinary course of business in all material respects and has agreed to certain other negative covenants. The Merger Agreement contains certain termination rights for Just Eat Takeaway.com and Grubhub. Upon termination of the Merger Agreement under specified circumstances, including if Just Eat Takeaway.com or Grubhub terminates the Merger Agreement in order to accept an alternative acquisition proposal that constitutes a superior proposal or if the board of one party changes its recommendation of the transaction, Just Eat Takeaway.com or Grubhub, as applicable, will be required to pay the other party a termination fee of $144 million.

The foregoing description of the Merger Agreement and the transactions contemplated thereby does not purport to be complete and is subject to, and qualified in its entirety by, the full text of the Merger Agreement.

**Information on Just Eat Takeaway.com**

Just Eat Takeaway.com (AMS: TKWY, LSE: JET) is a leading global online food delivery marketplace outside China. Headquartered in Amsterdam, the Company is focused on connecting consumers and restaurants through its platforms. With over 155,000 connected restaurants, Just Eat Takeaway.com offers consumers a wide variety of food choice. Just Eat Takeaway.com mainly collaborates with delivery restaurants. In addition, Just Eat Takeaway.com provides its proprietary restaurant delivery services for restaurants that do not deliver themselves. The combination of Just Eat and Takeaway.com has rapidly grown to become a leading online food delivery marketplace with operations in the U.K., the Netherlands, Germany, Denmark, France, Ireland, Italy, Norway, Spain, Belgium, Poland, Austria, Israel, Switzerland, Luxembourg, Portugal, Bulgaria, Romania, Australia, New Zealand, Canada, Mexico and Brazil. In the financial year ended 31 December 2019 and prior to the completion of the merger with Just Eat, the Company generated revenues of €416 million, loss before tax of €88 million and as at 31 December 2019 had gross assets of €1,659 million.

**Information on Grubhub**

Grubhub (NYSE: GRUB) is a leading online and mobile food-ordering and delivery marketplace with the largest and most comprehensive network of restaurant partners, as well as nearly 24 million active diners. Dedicated to connecting diners with the food they love from their favourite local restaurants, Grubhub elevates food ordering through innovative restaurant technology, easy-to-use platforms and an improved delivery experience. Grubhub features nearly 300,000 restaurants and is proud to partner with more than 200,000 of these restaurants in over 4,000 U.S. cities. The Grubhub portfolio of brands includes Grubhub, Seamless, LevelUp, AllMenus and MenuPages. In the financial year ended 31 December 2019, Grubhub generated revenues of $1,312 million, loss before tax of $26.8 million and as at 31 December 2019 had gross assets of $2,375 million.

20. On April 27, 2021, the Company filed a Schedule 14A Preliminary Proxy Statement under Section 14(a) of the Exchange Act (the "Proxy Statement") with the SEC in connection with the Proposed Transaction.

**B. The Proxy Statement Contains Materially False and Misleading Statements and Omissions**

21. The Proxy Statement, which recommends that Grubhub shareholders vote in favor

of the Proposed Transaction, omits and/or misrepresents material information concerning: (i) Grubhub's and Just Eat's financial projections; (ii) the financial analyses performed by Grubhub's financial advisor, Evercore Group L.L.C. ("Evercore"), in connection with its fairness opinion; and (iii) potential conflicts of interest involving Company insiders.

22. The omission of the material information (referenced below) renders the following sections of the Proxy Statement false and misleading, among others: (i) Background of the Merger; (ii) Grubhub's Purposes and Reasons for the Transaction; Recommendation of the Grubhub Board; (iii) Opinion of Grubhub's Financial Advisor; and (iv) Certain Unaudited Prospective Financial Information Prepared by Grubhub.

23. Unless and until the material misstatements and omissions (referenced below) are remedied before the anticipated shareholder vote on the Proposed Transaction, Grubhub shareholders will be forced to make a voting decision on the Proposed Transaction without full disclosure of all material information. In the event the Proposed Transaction is consummated, Plaintiff may seek to recover damages resulting from Defendants' misconduct.

1. **Material Omissions Concerning Grubhub's and Just Eat's Financial Projections**

24. The Proxy Statement omits material information concerning Grubhub's and Just Eat's financial projections.

25. With respect to the Grubhub Financial Projections, the Proxy Statement fails to disclose: (1) all line items underlying (i) Revenue, (ii) Adjusted EBITDA, and (iii) Levered Free Cash Flow; (2) Grubhub's net income projections;[1] and (3) a reconciliation of all non-GAAP to

---

[1] According to the Proxy Statement, Grubhub's net income is a component of Grubhub's adjusted EBITDA and levered free cash flow. *See* Proxy Statement at 103 (emphasis added). Therefore, Grubhub's net income projections exist and must be disclosed.

8

GAAP metrics.

26.     With respect to the Counterparty Financial Projections Used by Grubhub, the Proxy Statement fails to disclose: (1) all line items underlying (i) Adjusted Net Revenue, (ii) Adjusted EBITDA, and (iii) Unlevered Free Cash Flow; (2) Just Eat's net income projections; (3) the "certain adjustments based on Grubhub management's assumptions and due diligence review"; and (4) a reconciliation of all non-GAAP to GAAP metrics.

27.     The disclosure of this information is material because it would provide the Company's shareholders with a basis to project the future financial performance of the Company and combined company would allow shareholders to better understand the financial analyses performed by the Company's financial advisor in support of its fairness opinion. Shareholders cannot hope to replicate management's inside view of the future prospects of the Company. Without such information, which is uniquely possessed by Defendant(s) and the Company's financial advisor, the Company's shareholders are unable to determine how much weight, if any, to place on the Company's financial advisor's fairness opinion in determining whether to vote for or against the Proposed Transaction.

28.     When a company discloses non-GAAP financial metrics in a Proxy Statement that were relied upon by its board of directors in recommending that shareholders exercise their corporate suffrage rights in a particular manner, the company must also disclose, pursuant to SEC Regulation G, all projections and information necessary to make the non-GAAP metrics not misleading, and must provide a reconciliation (by schedule or other clearly understandable method) of the differences between the non-GAAP financial metrics disclosed or released with the most comparable financial metrics calculated and presented in accordance with GAAP. 17 C.F.R.

§ 244.100.[2]

29. The above-referenced omitted information, if disclosed, would significantly alter the total mix of information available to the Company's shareholders.

### 2. Material Omissions Concerning Evercore's Analyses

30. In connection with the Proposed Transaction, the Proxy Statement omits material information concerning analyses performed by Evercore.

31. The Proxy Statement fails to disclose the following concerning Evercore's "*Discounted Cash Flow Analysis*" of Grubhub: (1) all line items underlying the standalone unlevered, after-tax free cash flows that Grubhub was forecasted to generate during Grubhub's second, third and fourth quarter of fiscal year 2020 and fiscal years 2021 through 2024; (2) the terminal values for Grubhub; (3) the individual inputs and assumptions underlying the (i) terminal year multiples ranging from 16.0x to 20.0x, (ii) perpetuity growth rates of 6.8% to 9.2%, and (iii) discount rates ranging from 9.0% to 11.0%; (4) the tax savings of Grubhub attributed to its net operating losses; (5) Grubhub's net debt as of March 31, 2020; and (6) the number of fully diluted outstanding shares of Grubhub.

32. The Proxy Statement fails to disclose the following concerning Evercore's "*Discounted Cash Flow Analysis*" of Just Eat: (1) all line items underlying the standalone unlevered, after-tax free cash flows that Just Eat Takeaway.com was forecasted to generate during

---

[2] Mary Jo White, *Keynote Address, International Corporate Governance Network Annual Conference: Focusing the Lens of Disclosure to Set the Path Forward on Board Diversity, Non-GAAP, and Sustainability* (June 27, 2016), https://www.sec.gov/news/speech/chair-white-icgn-speech.html (footnotes omitted) (last visited May 5, 2021) ("And last month, the staff issued guidance addressing a number of troublesome practices which can make non-GAAP disclosures misleading: the lack of equal or greater prominence for GAAP measures; exclusion of normal, recurring cash operating expenses; individually tailored non-GAAP revenues; lack of consistency; cherry-picking; and the use of cash per share data. I strongly urge companies to carefully consider this guidance and revisit their approach to non-GAAP disclosures.").

Just Eat Takeaway.com's fiscal years 2020 through 2029; (2) the terminal values for Just Eat Takeaway.com; (3) the individual inputs and assumptions underlying the (i) terminal year multiples ranging from 12.0x to 14.0x, (ii) perpetuity growth rates of 2.6% to 5.3%, and (iii) discount rates ranging from 9.0% to 11.0%; (4) the tax savings of Just Eat Takeaway.com attributed to unused tax losses; (5) Just Eat Takeaway.com's estimated net debt; (6) Just Eat Takeaway.com's unconsolidated assets; and (7) the number of fully diluted outstanding shares of Just Eat Takeaway.com.

33. With respect to Evercore's "*Equity Research Analyst Price Targets*" analyses of Grubhub and Just Eat, the Proxy Statement fails to disclose: (1) the individual price targets observed by Evercore in its analyses; and (2) the sources thereof.

34. With respect to Evercore's "*Premia Paid Analysis*," the Proxy Statement fails to disclose each transaction and the individual premiums paid therein.

35. The valuation methods, underlying assumptions, and key inputs used by Evercore in rendering its purported fairness opinion must be fairly disclosed to Grubhub shareholders. The description of Evercore's fairness opinion and analyses, however, fails to include key inputs and assumptions underlying those analyses. Without the information described above, Grubhub shareholders are unable to fully understand Evercore's fairness opinion and analyses, and are thus unable to determine how much weight, if any, to place on them in determining whether to vote for or against the Proposed Transaction. This omitted information, if disclosed, would significantly alter the total mix of information available to the Company's shareholders.

### 3. Material Omissions Concerning Company Insiders' Potential Conflicts of Interest

36. The Proxy Statement omits material information concerning potential conflicts of

interest involving Company insiders.

37. The Proxy Statement provides the following concerning "***New Compensation Arrangements with Just Eat Takeaway.com***":

> ***New Compensation Arrangements with Just Eat Takeaway.com***
>
> Any executive officers and directors who become officers, directors or employees or who otherwise are retained to provide services to Just Eat Takeaway.com or the surviving corporation may enter into new individualized compensation arrangements and may participate in cash or equity incentive or other benefit plans maintained by Just Eat Takeaway.com. As of the date of this proxy statement/prospectus, Just Eat Takeaway.com Shareholders have approved the appointment of Messrs. Fisher and Frink to the Just Eat Takeaway.com Supervisory Board, and the appointment of Mr. Maloney to the Just Eat Takeaway.com Management Board, in each case effective upon Completion and for a term until the end of Just Eat Takeaway.com's annual General Meeting held in 2021. At Just Eat Takeaway.com's annual General Meeting for 2021, which is expected to be held on 12 May 2021, it is proposed that each of Messrs. Frink and Fisher be re-appointed as members of Just Eat Takeaway.com's Supervisory Board and that Mr. Maloney be re-appointed as a member of Just Eat Takeaway.com's Management Board, in each case effective upon Completion and for a term until the end of Just Eat Takeaway.com's annual General Meeting held in 2022.

38. The Proxy Statement, however, fails to sufficiently disclose the details of all employment-related and compensation-related discussions and negotiations concerning the Company's officers and directors, including the parties to such communications, when they occurred, and the specific content discussed/communicated.

39. The Proxy Statement further fails to sufficiently disclose the extent to which Just Eat's proposals mentioned management retention or equity participation in the combined company.

40. Any communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to shareholders. This information is necessary for shareholders to understand potential conflicts of interest of management and the Board. Such information may illuminate the motivations that would prevent fiduciaries from acting

solely in the best interests of the Company's shareholders.

41. The above-referenced omitted information, if disclosed, would significantly alter the total mix of information available to the Company's shareholders.

## COUNT I
### For Violations of Section 14(a) and Rule 14a-9 Promulgated Thereunder
### Against All Defendants

42. Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

43. During the relevant period, Defendants, individually and in concert, directly or indirectly, disseminated or approved the false and misleading Proxy Statement specified above, which failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading, in violation of Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder by the SEC.

44. Each of the Individual Defendants, by virtue of his/her positions within the Company as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a) of the Exchange Act. Defendants, by use of the mails and means and instrumentalities of interstate commerce, solicited and/or permitted the use of their names to file and disseminate the Proxy Statement with respect to the Proposed Transaction. The Defendants were, at minimum, negligent in filing the materially false and misleading Proxy Statement.

45. The false and misleading statements and omissions in the Proxy Statement are material in that a reasonable shareholder would consider them important in deciding how to vote on the Proposed Transaction.

46. By reason of the foregoing, Defendants have violated Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder.

47. Because of the false and misleading statements and omissions in the Proxy Statement, Plaintiff is threatened with irreparable harm.

## COUNT II
### Violations of Section 20(a) of the Exchange Act
### Against the Individual Defendants

48. Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

49. The Individual Defendants acted as control persons of the Company within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their senior positions as officers and/or directors of the Company and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Proxy Statement filed with the SEC, they had the power to and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the false and misleading Proxy Statement.

50. Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected. As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to the Proxy Statement, and to correct promptly any public statements issued by the Company which were or had become materially false or misleading.

51. In particular, each of the Individual Defendants had direct and supervisory involvement in the operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged

herein, and exercised the same. The Individual Defendants were provided with or had unlimited access to copies of the Proxy Statement and had the ability to prevent the issuance of the statements or to cause the statements to be corrected. The Proxy Statement at issue contains the recommendation of the Individual Defendants to approve the Proposed Transaction. Thus, the Individual Defendants were directly involved in the making of the Proxy Statement.

52. In addition, as the Proxy Statement sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Proposed Transaction. The Proxy Statement purports to describe the various issues and information that they reviewed and considered—descriptions which had input from the Individual Defendants.

53. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

54. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9 promulgated thereunder, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Defendants' conduct, the Company's shareholders will be irreparably harmed.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

A. Preliminarily and permanently enjoining Defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction and any vote on the Proposed Transaction, unless and until Defendants disclose and disseminate the material information identified above to Company shareholders;

  B. In the event Defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages;

  C. Declaring that Defendants violated Sections 14(a) and 20(a) of the Exchange Act, and Rule 14a-9 promulgated thereunder;

  D. Awarding Plaintiff reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

  E. Granting such other and further relief as the Court may deem just and proper.

**JURY TRIAL DEMANDED**

Plaintiff hereby demands a trial by jury.

Dated: May 5, 2021         Respectfully submitted,

                 **HALPER SADEH LLP**

                 By: /s/ Daniel Sadeh
                 Daniel Sadeh, Esq.
                 Zachary Halper, Esq. (to be admitted *pro hac vice*)
                 667 Madison Avenue, 5th Floor
                 New York, NY 10065
                 Telephone: (212) 763-0060
                 Facsimile: (646) 776-2600
                 Email: sadeh@halpersadeh.com
                     zhalper@halpersadeh.com

                 *Counsel for Plaintiff*